**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA L.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Civil Action No. 25-17212 (RK)<br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Maria L.'s[1] ("Maria" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Maria's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **VACATES** and **REMANDS** the Commissioner's decision for further proceedings.

## I. BACKGROUND

In this appeal, the Court must answer the following question: Did Administrative Law Judge Leonard Costa ("the ALJ" or "Judge Costa") properly analyze, with substantial evidence, Maria's residual functional capacity under the Social Security Act?

### A. PROCEDURAL POSTURE

On July 9, 2023, Maria filed an application for a period of disability and disability insurance benefits, alleging an onset date of October 1, 2022. (Administrative Record ("AR") at

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

92.)[2] At the time of the alleged onset date, Maria was 40 years old. (*Id.*) The Social Security Administration (the "Administration") denied the requests both initially, (*id.* at 102–06), and on reconsideration, (*id.* at 108–11). Thereafter, Maria requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 112–15.) On January 16, 2025, Maria, now 41 years old and represented by counsel, and Steven Feinstein, a vocational expert ("VE"), testified at a telephonic hearing before Judge Costa. (*Id.* at 35–54.) On February 14, 2025, Judge Costa issued a written decision finding that Maria was not disabled. (*Id.* at 17–28.) The Administration's Appeals Council denied Maria's request to review Judge Costa's decision. (*Id.* at 1–3.) This appeal followed. (ECF No. 1.) The AR was filed on December 27, 2025. (ECF No. 4.) Maria then filed her moving brief ("Pl. Br.," ECF No. 9), the Commissioner opposed ("Opp.," ECF No. 11), and Maria replied ("Reply," ECF No. 12).

### B. JUDGE COSTA'S DECISION

As stated in his February 14, 2025 decision, Judge Costa held that Maria was not disabled under the prevailing Administration regulations. (*See generally* AR at 17–28.) To reach this conclusion, Judge Costa analyzed Maria's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). At Step One, Judge Costa found that Maria had not engaged in substantial gainful activity since October 1, 2022, her alleged onset date. (*Id.* at 19 (citing 20 C.F.R. § 404.1571 *et seq.*).)

At Step Two, Judge Costa found that Maria suffers from four severe impairments: multiple sclerosis ("MS"), a neurogenic bladder, bipolar disorder, and an anxiety disorder. (*Id.* at 19 (citing 20 C.F.R. § 404.1520(c)).) Judge Costa concluded that these severe impairments "significantly

---

[2] The AR is available at ECF Nos. 4-1 through 4-13. This Opinion will reference only page numbers in the record without the corresponding ECF numbers.

limit" Maria's ability to perform basic work activities. (*Id.*) Judge Costa also noted that the AR "makes reference to hypothyroidism," but that "there is no evidence to show that this impairment has had the requisite limiting effects on the claimant's ability to perform basic work activities." (*Id.* at 20.)

At Step Three, Judge Costa determined that Maria does not have an "impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As a precursor to Step Four, Judge Costa concluded, based on a review of the evidence in the record, that Maria has the residual functional capacity ("RFC") to perform "sedentary" work, *see* 20 C.F.R. § 404.1567(b), but that any job she performs has to be limited in specified ways:

> The claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can only occasionally climb ramps and stairs, stoop, kneel, crouch, balance, and/or crawl; she can never climb ladders, ropes, or scaffolds; she can occasionally push/pull controls with the upper and/or lower extremities; she can have no exposure to unprotected heights or hazardous machinery; she can frequently handle and finger objects; she requires ready access to a restroom; she can have occasional interaction with the general public, co-workers and supervisors; she is able to understand, remember and carry out simple instructions with only occasional changes to essential job functions; she is able to make simple work-related decisions; and she would be off-task 10% of the workday due to fatigue.

(AR at 21–22.) As part of this determination, Judge Costa incorporated extensive evidence from the record. (*Id.* at 20–26.)

At Step Four, Judge Costa noted that Maria did not have any past relevant work, meaning the transferability of job skills was not an issue. (*Id.* at 26 (citing 20 C.F.R. §§ 404.1565, 404.1568).) At Step Five, Judge Costa, relying on the VE's testimony, concluded that Maria could perform other jobs that existed in significant numbers in the national economy (and that were

consistent with her RFC), including "Office Clerk," "Bookkeeping," and "Production Clerk."[3] (*Id.* at 27–28 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) Thus, because she could perform such work, Judge Costa concluded that Maria was not under a disability from October 1, 2022, through December 31, 2024, the date last insured. (*Id.* at 28 (citing 20 C.F.R. § 404.1520(g)).)

This appeal concerns Judge Costa's evaluation of Maria's RFC at the precursor to Step Four. More specifically, Maria challenges Judge Costa's analysis of (1) the opinions of Plaintiff's treating psychiatrist, Dr. Neha Naqvi, regarding Plaintiff's mental limitations and (2) the opinions of Plaintiff's treating neurologist, Dr. Amos Katz, regarding Plaintiff's physical limitations.[4] (*See* Pl. Br. at 1, 8–17.) Because the Court finds below that Judge Costa's conclusions regarding Dr. Katz's medical opinions were not supported by substantial evidence, the Court focuses its review of the ALJ's opinion on this issue.[5]

---

[3] During the telephone hearing before Judge Costa, the VE testified that although such jobs existed for Maria when analyzing Judge Costa's specified RFC, (AR at 49–51), the VE opined that if the "off-task behavior" were increased to 15% of the workday from 10%, no jobs would exist in the national economy. (*Id.* at 51.)

[4] Maria does not challenge Judge Costa's assessments of (1) Plaintiff's disability report and hearing testimony, (2) the third-party function report of Rick L., Plaintiff's spouse, (3) Plaintiff's records with various doctors at Consultants in Urology and Atlantic Health other than Dr. Amos Katz, (4) Dr. Jack Baharlias, an independent psychological evaluator, (5) the Disability Determination Explanations of psychological and physical examiners, or (6) the letter submitted by Dr. Cristie Ritz-King, another treating psychiatrist. (AR at 22–26 (citing AR at 84–91, 93–101, 234–243, 256–63, 264–71, 423–493, 494–532, 533–598, 599–602, 604–28, 629–30); Pl. Br. at 9–17.) Accordingly, Maria has forfeited her challenge to Judge Costa's assessment of those opinions and submissions. *See Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases).

[5] The Court does not address whether Judge Costa's credibility analysis of Dr. Naqvi, Maria's treating psychiatrist, was supported by substantial evidence. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003). However, the Court notes—with respect to Maria's mental impairments—that Dr. Naqvi documented: broadly normal and fair symptoms at August 2023 and October 2023 examinations; that Maria was in "good spirits" at March and April 2024 examinations; and that Maria's psychotropic drug and "EMDR" therapy regimens were effective in treating Maria's psychological symptoms. (AR at 608–25.) Judge Costa analyzed all of this evidence and more, (*id.* at 24–26), and his assessment of the supportability and consistency of Dr. Naqvi's opinions would be entitled to substantial deference. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

### C. Dr. Amos Katz and Plaintiff's Physical Limitations

Judge Costa's RFC determination at the precursor to Step Four came after his "careful consideration of the entire record," including the objective medical evidence, opinions, and prior administrative medical findings therein. (AR at 22–26.) This included the opinions of Plaintiff's treating neurologist, Dr. Amos Katz. (*Id.* at 26 (citing AR at 1308–1385); Opp. at 9.)

On June 29, 2022, Dr. Katz documented Maria's severe MS.[6] (AR at 1325.) Dr. Katz noted that Plaintiff has received more than 90 doses of Tysabri to treat her MS.[7] Plaintiff reported to Dr. Katz that she "had not had any further urinary tract infections and has not needed Botox for bladder spasticity for almost a year." (*Id.*) Maria also told Dr. Katz that "MS wise" she had "no new complaints." (*Id.*) In his assessment of Maria, Dr. Katz noted that Maria had 5/5 motor strength but did have a "slightly wide-based ataxic gait" when walking. (*Id.*); *see* "Ataxia," *Merriam-Webster*, https://www.merriam-webster.com/dictionary/ataxia ("[A]n inability to coordinate voluntary muscular movements that is symptomatic of some central nervous system disorders and injuries and not due to muscle weakness."). At her January 6, 2023 follow-up appointment,[8] Maria received another Tysabri dose, which she tolerated well, and was noted to have some "intermittent bilateral wrist and ankle pain and weakness." (*Id.* at 550, 554.) That January 2023 progress report also documented that Maria's MRIs from August 2022 and lab work from July 2022 indicated no changes or abnormalities. (*Id.* at 554.) Plaintiff received another Tysabri dose on July 7, 2023, January 30, 2024, and July 30, 2024, with no new MS "complaints." (*Id.* at 564, 1344, 1365.)

---

[6] Judge Costa discussed this and other visits relating to Plaintiff's physical health without naming Dr. Katz on page 24 of the AR. (*See* AR at 24 (citing AR at 533–98).)

[7] Tysabri is an intravenous injection medication used to treat MS and Crohn's disease. "TYSABRI - natalizumab injection," *DailyMed* (last updated Mar. 21, 2025), https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=c5fdde91-1989-4dd2-9129-4f3323ea2962.

[8] The progress notes from this appointment were not authored by Dr. Katz, but instead by nurses at the same healthcare provider. (AR at 550, 554.)

On October 1, 2024, Dr. Katz opined, based on these progress notes, that Maria experienced daily, "Heavy Ache" pain as a result of her MS. (*Id.* at 1308–09, 1316.) He noted, as discussed above, that Maria receives treatment every 3 to 6 months for her MS, primarily in the form of Tysabri injections. (*Id.* at 1308.) In light of this "chronic" and "ongoing" pain and Maria's "Severe Relapsing MS," Dr. Katz opined that Maria could (1) sit for "about 4 hours" at a time, (2) stand or walk for "less than 2 hours" at a time, and (3) would likely be off task 20% of a "typical workday." (*Id.* at 1309.) Dr. Katz described this off-task time as "10-15 min[ute] hourly [breaks] as needed." (*Id.* at 1312.)

Judge Costa did not find Dr. Katz's opinion "to be fully persuasive." (*Id.* at 26.) Judge Costa noted that the basis for Dr. Katz's opinion—the "fact that the claimant undergoes infusions" for her MS—did not support the conclusion that Maria is "unable to perform even sedentary exertional work and would be off task 20% of the workday," and that there was no other evidence in the record to support that conclusion. (*Id.*) Based on this, Judge Costa concluded "in accordance with the entire record," that Maria's limitations "would only result in her being off task for 10% of the workday due to her complaints of fatigue." (*Id.*)

## II. LEGAL STANDARD

### A. Standard of Review

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*,

399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or him past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III. DISCUSSION

To support her request for remand under 42 U.S.C. § 405(g), Maria argues that Judge Costa's RFC determination at the precursor to Step Four improperly analyzed the various medical opinions and subjective testimony discussed above. (Pl. Br. at 9–17.) Maria asserts that Judge Costa's determined RFC did not incorporate the total limiting effects of her physical ailments, particularly her MS. (*Id.* at 13–17 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).) Specifically, Maria argues that Judge Costa's asserted RFC—in essence concluding that Maria was capable of sedentary work with 10% off-task time each workday, subject to other limitations, (AR at 21–22)—was not supported by substantial evidence in the record, (Pl. Br. at 14–17 (arguing that the ALJ's RFC limitation of 10% off-task time was "unfounded" and made without specific connection to the record).)

ALJs often consider the percentage of each workday that a person would be "off task," i.e., not performing work, when determining a claimant's RFC. As part of their review under 42 U.S.C. § 405(g), District Courts assess whether such a percentage is supported by substantial evidence. *See, e.g.*, *Russell v. Dudek*, No. 24-350, 2025 WL 1257972, at *9–10 (M.D. Pa. Apr. 30, 2025) (collecting cases) ("The ALJ's omission of any meaningful discussion regarding off-task time or absenteeism related to the plaintiff's IBS and restroom needs deprives the Court of the ability to

conduct meaningful review."). Moreover, such an omission in analysis can constitute harmful error: The off-task percentage affects an individual's ability to seek employment—indeed, as further explained below, the VE in this case testified that an off-task percentage of 15% or greater "would preclude any jobs" while an off-task percentage of 10% would not. (AR at 49–51.)

Although the evidentiary threshold for substantial evidence "is not high," *Biestek*, 587 U.S. at 103, RFC determinations—including for findings regarding off-task time—must still be supported by substantial evidence in the record, *see, e.g.*, *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (explaining that "[a]n ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion" and remanding where ALJ had not established that connection between record evidence and off-task percentage calculation). The ALJ must demonstrate why he chose a specific percentage of off-task time "rather than some other duration and frequency." *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (vacating and remanding for further RFC analysis of off-task time). Because the ALJ is required to ensure "sufficient development of the record and explanation of findings to permit meaningful review," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), this omission in analysis makes it "impossible for the reviewing Court to determine if the ALJ's [off-task] assessment . . . is supported by substantial evidence without knowing the basis for the figure," *McNeely v. Saul*, No. 20-158, 2020 WL 5648214, at *8 (S.D. W. Va. Sept. 4, 2020), *report and recommendation adopted*, 2020 WL 5649483 (S.D. W. Va. Sept. 22, 2020). *Cf. Borchers v. Comm'r of Soc. Sec.*, No. 19-13670, 2020 WL 4048050, at *8 (D.N.J. July 20, 2020) (affirming ALJ's 5% off-task finding where ALJ "properly supported" the percentage with evidence in the record).

Where evidence in the record—particularly from a VE—suggests that a higher percentage of off-task time would preclude a plaintiff from acquiring employment, an ALJ's insufficient

analysis of off-task time constitutes harmful error requiring remand. *See, e.g.*, *Cosnyka*, 576 F. App'x at 46; *McNeely*, 2020 WL 5648214, at *8–10 (collecting cases and concluding that ALJ had not sufficiently explained off-task percentage given plaintiff's severe impairments); *Dowling v. Comm'r of Soc. Sec.*, 986 F.3d 377, 389 (4th Cir. 2021), *superseded on other grounds by regulation*, 20 C.F.R. § 404.1520c(a), *as recognized in Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025); *Lanigan*, 865 F.3d at 563 (explaining that ALJ must "build an accurate and logical bridge" between off-task finding and evidence in the record (citation and quotation marks omitted)); *Russell* , 2025 WL 1257972, at *9–10 (collecting cases); *Jeffrey B. v. Saul*, No. 20-1090, 2021 WL 797920, at *3 (D. Md. Mar. 2, 2021) ("The lack of any explanation as to how the ALJ calculated this percentage is significant because 'a one percent increase could preclude competitive employment.'" (quoting *Petry v. Comm'r of Soc. Sec.*, No. 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017))).

Judge Costa provided no specific analysis as to how he reached this 10% off-task figure as opposed to some other percentage. (*See* AR at 17–28.) Despite acknowledging the severity of Maria's MS and concluding that Maria's symptoms "significantly limit" her ability to "perform basic work activities," (*id.* at 19), Judge Costa's only reference to an amount of break time Maria would need during the workday was that "due to [Maria's] complaints of fatigue" she would need to be off task 10% of the workday, (*id.* at 26). Judge Costa did not clarify what portion of Maria's testimony or the broader medical record supported this calculation. (*Id.* at 30.) When Judge Costa concluded that the appropriate amount of off-task time was 10% of the workday, he did not explain why this percentage, and not some other amount, was sufficient to accommodate Maria's MS issues, or critically, how he arrived at the 10% mark.[9]

[9] It is also unclear if the specified off-task time is related to Maria's MS. In formulating Maria's RFC, Judge Costa concluded that Maria would require the specified off-task time "due to fatigue," not specifying which

Instead, Judge Costa's analysis of Dr. Katz's opinion merely *discredits* that opinion as unpersuasive. Discrediting the various medical opinions in the record is not *affirmative* evidence supportive of Judge Costa's 10% figure. *See C.G. v. Comm'r of Soc. Sec.*, No. 24-9783, 2026 WL 1649954, at *3 (D.N.J. June 8, 2026) (explaining that ALJ needed to explain how inconsistencies in testimony and evidence led to alternative off-task time percentage). As explained above, Judge Costa found Dr. Katz's opinions about Maria's required off-task time were not "fully persuasive." (AR at 26.) Judge Costa recounted in detail how in June 2022, January 2023, July 2023, and January 2024, Maria had no complaints for Dr. Katz about her MS given the effectiveness of her consistent Tysabri injections. (*Id.* at 25–26 (discussing AR at 554, 564, 1325, 1344, 1365).) Judge Costa also discussed Maria's August 2022 MRI and July 2022 lab work indicating no changes or abnormalities with her MS since treatment had started. (*Id.* at 25 (discussing AR at 554).)

The ALJ is entitled to broad deference in his assessments of the persuasiveness of the medical sources and claimant's testimony and could have reasonably concluded that Dr. Katz's opinion was not fully persuasive. *See Chandler*, 667 F.3d at 359; *Morales*, 225 F.3d at 316. However, because Judge Costa did not adequately support his 10% off-task conclusion with evidence from the record, the Court is constrained to remand for further development of the record and additional analysis. *See Lanigan*, 865 F.3d at 563 (remanding where ALJ had not "buil[t] an accurate and logical bridge" between off-task percentage and evidence in the record). Even if Judge Costa could have reasonably concluded that Dr. Katz's asserted frequency of pain- or fatigue-related breaks was *too much* or that those breaks were *too long*, he did not analyze why his

---

of the four severe impairments required this time, and how. (AR at 19, 22.) In fact, Dr. Katz's opinion suggested that Maria would need breaks related to the pain she experiences from her MS. (*Id.* at 1308–10, *see also* 632 (Maria's treating psychiatrist opining that Maria would be off task between 50-75% because of her mental impairments).) On remand, as part of explaining the reasoning for her off-task determination, the ALJ should clarify which of Maria's "impairments"—or combination of impairments—necessitate off-task time.

alternative conclusion of only 10% of the workday was *instead* appropriate. *Russell*, 2025 WL 1257972, at *9; *C.G.*, 2026 WL 1649954, at *4.

Based on testimony from the VE, this error was not harmless. Incremental differences in off-task percentage, per the VE, had a direct impact on Maria's ability to perform work within the national economy. (*See* AR at 49–51); *see also McNeely*, 2020 WL 5648214, at *8 ("[T]he ALJ's failure to explain the specific [off-task percentage] limitation cannot be considered harmless in light of the VE's testimony that a relatively small increase would preclude competitive employment."). Specifically, at the January 16, 2025 hearing, the VE testified that jobs existed in sufficient numbers for a person to find employment if she was off-task 10% of the time, (AR at 49–50), but not 15% of the time, (*id.* at 51). Needing to be off-task 15% or more of the workday "would preclude any jobs" for Maria in the national economy. (*Id.*)

Accordingly, for the reasons stated, the Court is constrained to remand this case to the Commissioner for further proceedings. The Court expresses no opinion as to whether Maria is disabled under the relevant regulations, or whether Judge Costa's findings regarding Maria's other impairments and capacity for light work are supported by substantial evidence. *Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003); *Jeffrey B.*, 2021 WL 797920, at *4. On remand, the ALJ should develop the record to substantiate any future off-task time finding with corroborative, objective medical evidence from Maria's treating and consultative physicians, including objective medical tests.

**CONCLUSION**

Having reviewed the record as a whole, the Commissioner's decision is **VACATED**, and this case is **REMANDED** for further proceedings.

An appropriate Order follows.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: October 19, 2026